IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL A. HANLEY, SR. et al., <br> Plaintiffs, <br><br> v. <br><br> SHAWN BLOOM et al., <br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION <br><br> No. 15-3884 <br><br> **FILED** <br> AUG 3 1 2016 <br> LUCY V. CHIN, Interim Clerk <br> By _____ Dep. Clerk |

### MEMORANDUM ORDER

This 31st day of August, 2016, upon consideration of Defendants' Motion for Partial Summary Judgment and Plaintiffs' Opposition thereto, it is hereby **ORDERED** that Defendants' Motion is **DENIED** for the following reasons.

The Court has undertaken a comprehensive review of all supporting papers and exhibits, including but not limited to:

1. Key testimony from Defendant Shawn Bloom's March 7, 2016 Deposition regarding Defendants' sudden medical emergency defense. Defendants' Motion at Exhibit 1; Plaintiffs' Opposition Brief at Exhibit D.

2. Key testimony from Robert Brothers' March 8, 2016 Deposition regarding Bloom's illness and Defendant American Exploration Company's ("AEC") work practices. Defendants' Motion at Exhibit 6; Plaintiffs' Opposition Brief at Exhibit C, 82:7–8 ("I was informed that we can work as many hours as we wanted to."); and 50:13–20, 124:17–19 ("I had heard Shawn coughing – coughing from the day I started working for American [approximately two weeks before the accident].")

3. The Pennsylvania State Police Crash Report regarding the October 28, 2014 accident, placing the time of the accident at 10:20 AM and memorializing Bloom's November 10,

1

2014 hospital statement to police after he awoke from a medically induced coma as follows: "[Bloom] was having difficulty remembering, but … he had a coughing fit prior to the crash … [and] believes he threw up and possibly passed out prior to crashing." Defendants' Motion at Exhibit 8.

4. Verizon cell phone records establishing that Bloom was utilizing a cell phone prior to the accident on October 28, 2014, beginning at 10:12 AM, and the call lasted seven minutes. Defendants' Motion at Exhibit 7.

5. Expert Report of Gerald Krueger, Ph.D., opining as follows:

   a. "Shawn Bloom chronically overworked." *Id.* at ¶ 5b.

   b. "Shawn Bloom's AEC employers permitted him to determine his own weekly work hours, and to continue to drive despite his repeated skirting of and violating the [DOT-Federal Motor Carrier Safety Administration ("FMCSA") Hours of Service ("HOS")] rules." *Id.* at ¶ 5c.

   c. "Mr. Bloom and AEC broke the law by Mr. Bloom's violation of the DOT-FMCSA HOS rules." *Id.* at ¶ 6.

   d. "Driver Shawn Bloom was chronically sleep deprived, and he was fatigued at the time of the crash." *Id.* at ¶ 7.

   e. "Mr. Bloom had a microsleep just prior to the crash…. It seems highly unlikely that an experienced professional truck driver would not be able to control his truck during a coughing spell, at least enough so as to begin a braking action at the slow speed Mr. Bloom said he was traveling." *Id.* at ¶ 10.

   f. "American Exploration Company did not provide oversight of driver fatigue management." *Id.* at 12b.

*See generally* Plaintiffs' Opposition Brief at Exhibit S.

6. Expert Report of Mark Cowan, M.D., opining as follows:

    a. "Mr. Bloom was massively overworked in the 3 months prior to his accident." Cowan report at ¶ 3.

    b. "Ultimately, [Bloom's] work schedule lead to sleep deprivation/overwork, causing a pneumonia, the combination of which were the major factors in his accident." *Id.* at ¶ 5.

*See generally* Plaintiffs' Opposition Brief at Exhibit R.

7. Expert Report of Whitney Morgan, concluding, "AEC failed to have the necessary safety management controls in place and functioning to meet the safety fitness standards, and to comply with the applicable safety regulations, with regard to Mr. Bloom, which fell below the standard of care and demonstrated a conscious disregard for the safety of the motoring public." Plaintiffs' Opposition Brief at Exhibit Y, 13.

8. Defendant Bloom's AEC Timesheets, evidencing that he "repeatedly violated the 60 hour rule, the 11 hour rule, the 14 hour rule, and the 10 hour break rule." Plaintiffs' Opposition Brief at 19 and Exhibit L.

9. Defendant Bloom's AEC Weekly Timesheets, created and signed off on by AEC supervisor/crew leader Bill Patterson, evidencing that Bloom regularly worked over 60 hours per week, and logged as many as 73 hours per week in the months leading up to the accident. Plaintiffs' Opposition Brief at Exhibit O.

In sum, Defendants continue to advance the *sudden* medical emergency defense. Plaintiffs argue in response that there is credible evidence casting doubt on the emergent nature

of Bloom's illness. Plaintiffs instead suggest that Bloom suffered from pneumonia for weeks prior to the accident, as well as chronic fatigue, which together caused an otherwise preventable tragic collision at the center of this wrongful death action. Plaintiffs further contend that the record evidence demonstrates that Defendants acted with a conscious and/or reckless disregard for the safety of others, which justifies sending the question of punitive damages to a jury.

Viewing the totality of the record, I find that there are genuine disputes as to material facts that would allow a reasonable juror to rule in Plaintiffs' favor on all claims, thereby precluding judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249; *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions. ... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Thus, at this juncture, it is appropriate for a jury to assess the credibility of the parties and their witnesses and weigh the evidence accordingly.

/s/ Gerald A. McHugh
_____
Gerald Austin McHugh
United States District Judge

4